IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-01225-MSK

ELIZABETH A. BUTTS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

# OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Elizabeth A. Butts' appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.**     **Jurisdiction**

On February 7, 2008, Ms. Butts filed claims for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI. She asserted that her disability began March 1, 2007. Her claims having been initially denied, Ms. Butts filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on November 17, 2009.

In a decision issued on January 29, 2010, the ALJ determined that Ms. Butts was not disabled at Step 5 of the applicable five-step analysis.  The ALJ determined that Ms. Butts had two severe impairments, migraine headaches ("migraines") and Post-Traumatic Stress Disorder ("PTSD"), these impairments, either individually or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"), and Ms. Butts had the Residual Functional Capacity ("RFC") to perform "light work" with limitations.  He found there were jobs in the national economy that she would be able to do given her age, education, work experience, and RFC.

Ms. Butts' request for review was denied by the Appeals Council, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  The appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 28 U.S.C. § 405(g).

**II.     Material Facts**

Having reviewed the record in light of the issues raised, the material facts are as follows. Ms. Butts suffers from periodic migraines and PTSD.  The PTSD was caused by a 2004 car accident, an accident which also increased the frequency of Ms. Butts' migraines.  Both her migraines and PTSD began to affect her job with the Denver Sheriff Department.  Ms. Butts eventually left the Sheriff Department on March 1, 2007 after more than ten years of employment.

 Ms. Butts saw a doctor regarding her migraine headaches several times in 2006.  In January 2007, Dr. Deborah Fisher, M.D. performed both a neurological and mental status exam and diagnosed Ms. Butts as suffering from "migraine headaches with aura," as well as "[PTSD]

related to a motor vehicle accident," and "an episode of depression in the past under good control now." Dr. Fisher also recorded in her notes that Ms. Butts was not responding well to a prescribed migraine medication and that "[i]f she treats her headache early in the course of its onset, medications can stop the migraine or decrease its intensity, but this is not consistent."

Shortly thereafter, Ms. Butts went to the Swedish Medical Center emergency room with headache pain, nausea, and vomiting. Dr. William Scott, M.D. ordered a CT scan and determined that Ms. Butts was suffering from a migraine headache.

Two treating professionals, Dr. Matthew Burke, M.D., and Dr. John McInroy, Ed.D., saw Ms. Butts in 2009. Dr. Burke saw Ms. Butts three times. His initial diagnostic impression for her included PTSD, migraines, and a Global Assessment of Functioning ("GAF") score of 60.[1] By the third session, he observed improvement in Ms. Butts' hypervigilance and anxiety. Dr. McInroy saw Ms. Butts from January to August 2009.[2] In clinical progress notes from these therapy sessions, he recorded that Ms. Butts suffered symptoms of PTSD, depression, and anxiety. In a mental RFC assessment dated September 1, 2009, Dr. McInroy recorded clinical findings that included migraine headaches, anxiety, and depression. He also assigned Ms. Butts a GAF score of 45 and indicated that she had moderately severe to severe limitations in areas such as attention, following instructions, working with others, and intelligence. Finally, he determined that Ms. Butts had marked difficulties with activities of daily living, social

---

[1] A GAF score is used to subjectively rate the social, occupational, and psychological functioning of adults on a scale of 1-100. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000).

[2] It is unclear how many times Dr. McInroy saw Ms. Butts. He indicated in a mental RFC assessment that he saw Ms. Butts weekly from January to August 2009. Ms. Butts testified that "after about that point [February 2009] we went from like weekly visits to about every six weeks because I was having – it was just very expensive." The record contains six therapy sessions reports from January to February 2009. At the hearing, Ms. Butts' attorney stated that "[t]here may be some outstanding records from Dr. McInroy, but they didn't have them. They couldn't locate them." There is no indication that the ALJ pursued these missing records. The Court will address this issue further in the Discussion section, *infra*.

functioning, maintaining concentration, persistence, and pace, and had at least three episodes of decompensation at least two weeks long.

In conjunction with her social security application, several medical consultants reviewed Ms. Butts' medical records.  Dr. Ian Happer, M.D., a reviewing consultant, determined that Ms. Butts had several physical work limitations based on her migraines, including limitations as to noise and fumes as well as limits on lifting objects, sitting, and standing.   Dr. Sara Sexton, Psy.D., an examining consultant, determined that Ms. Butts suffered from PTSD and found that Ms. Butts had mild functional impairments in maintaining social functioning and maintaining concentration, persistence, and pace, but that Ms. Butts did not have a history of extended episodes of decompensation.  Dr. Sexton also determined that Ms. Butts had a GAF score of 70 at the time of the interview.  Dr. Mac Bradley, Ph.D., an examining consultant, performed an evaluation in which he concluded that Ms. Butts suffered from PTSD but did not have "extreme impairment [in] her abilities in understanding and memory, sustained concentration and persistence, social interaction, or adaptation."

Ms. Butts testified that she quit her job with the Denver Sheriff because she was unorganized and "couldn't sustain any particular activity for very long, and it was very disruptive."  She described her migraines as "completely incapacitating" and that, even with medication, they occurred once or twice a week.  Ms. Butts stated that, if she took her medication soon after she felt the first symptoms of a migraine, the migraine would last a couple hours.  If she did not take her medication at the beginning of the migraine, it would last eight or ten hours and include nausea and vomiting.  Additionally, she had withdrawn from social activities and felt that she would not be able to complete even the most simple, quiet job.

### III. Issues Presented

Ms. Butts raises two challenges to the Commissioner's decision: the ALJ (1) failed to give specific and legitimate reasons to support the rejection of the treating psychologist's opinions and (2) failed to give adequate reasons for rejecting Ms. Butts' testimony.  Although the appeal does not direct the Court to a particular step in the ALJ's analysis, the Court understands these challenges to be directed to his findings and conclusions at Steps 3 and 4.

### IV. Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency."  *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

### V. Discussion

The Court follows the established five-step sequence for evaluating disability.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(b)-(f).  Because there appear to be no challenges to the findings at Steps 1, 2 and 5, the focus of the analysis is on the ALJ's findings at Steps 3 and 4.

When determining whether a claimant is disabled under Step 3 of the analysis, an ALJ must consider all the relevant evidence and then discuss not just the evidence that supports the decision, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citations omitted).  Inadequacy of articulation at Step 3 does not necessarily require reversal if "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the Step 3 determination under review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

    *A.    Migraines*

At Step 3 of the disability analysis, the ALJ made the following finding of fact: "The record indicates that the claimant's medication relieves the headache or reduces the severity if she takes it early in the onset of symptoms (Exhibit 3F/4)." As a result, he concluded, "the claimant's headaches do not satisfy a [L]isting."[3] The ALJ gave no other analysis at Step 3 to support his legal conclusion that Ms. Butts' migraines were not equivalent to a Listing.  In other words, he failed to fully discuss the evidence supporting his decision regarding Ms. Butts' migraines and made no mention of "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010.

The problem, here, is that the ALJ did not discuss information in the medical reports that was confirmatory of the nature, severity, intensity, and frequency of Ms. Butts' migraines.  The ALJ's discussion is limited to only one part of Dr. Fisher's medical report; Ms. Butts' inconsistent success with treating migraines at the earliest onset of migraine symptoms to reduce intensity and duration.  He did not discuss Dr. Fisher's notes that reflected that Ms. Butts

---

[3] The ALJ compared migraines with Section 11.00, Neurological Disorders, because migraines are not specifically listed in the Listings.

6

"suffers from migraines two to three times per week," or that these migraine headaches last from "eight hours to two days" and can include nausea and vomiting. The ALJ also did not mention Dr. Fisher's notation that Ms. Butts had been prescribed several medications that provided initial relief but seemed to lose responsiveness over time. Finally, the ALJ did not adequately address other medical records that also indicated the frequency and severity of Ms. Butts' migraines, including reports from Swedish Medical Center and Kaiser Permanente. As a result, the Court is unable to assess whether his conclusion at Step 3 is supported by substantial evidence and whether he applied the correct legal standard.

Although an ALJ's inadequate Step 3 analysis may be confirmed by other findings in his decision, that is not the case here. In Step 4 of his disability analysis, the ALJ also addressed Ms. Butts' migraines. Specifically, he summarized Ms. Butts' testimony and described more of Dr. Fisher's report as well as other medical records. The ALJ stated that Ms. Butts' impairments "could reasonably be expected to cause the alleged symptoms." However, the ALJ did not find Ms. Butts' testimony as to her subjective symptoms - intensity, severity and frequency - to be credible. The ALJ found that "[Ms. Butts' assertions] are inconsistent with the above residual functional capacity assessment." This finding is conclusory and inappropriately hinged the credibility determination upon the RFC. It addresses only the first of the three step analysis set forth in *Luna v. Bowen*, 834 F.2d 161, 162-66 (10th Cir. 1987), for assessment of subjective complaints. The Court is unable to determine from his decision whether he properly evaluated the credibility of Ms. Butts' subjective complaints because he failed to specifically associate subjective and objective evidence with his credibility determination.[4]

---

[4] The Court is cognizant of the general rule that credibility determinations "are peculiarly the province of the finder of fact" and should be left alone "when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). However, while a formalistic analysis is not necessarily required, an ALJ must state the specific evidence he relied

This is particularly troublesome because the ALJ made findings that corroborated Ms. Butts' testimony. The ALJ found that Ms. Butts suffered from migraines two to three times per week and that these migraines were often completely debilitating, that she received years of treatment (but no medical appointments from January 2007 to January 2009), and that she took numerous medications.  Although, the ALJ noted that she was able to take her children to school using a car, make meals, use the internet, and go to appointments when not suffering a migraine, he did not share his reasoning as to why Ms. Butts' daily activities when she was not experiencing a migraine affected the credibility of her statements as to their frequency or severity.  As such, the Court cannot say that the ALJ's analysis at Step 4 is complete as it does little to supplement his Step 3 analysis.

    B.    *PTSD*

The ALJ's Step 3 findings regarding Ms. Butts' PTSD were also inadequate.  The ALJ compared Ms. Butts' PTSD impairment to Listing 12.06.[5]  Under 12.06, a person with a severe mental impairment will be considered disabled if "the requirements of both A and B are satisfied" or "the requirements of both A and C are satisfied."

The ALJ apparently assumed that Ms. Butts met the requirements for 12.06(A), as he did not address this initial section but instead moved straight to an analysis of 12.06(B) and 12.06(C).[6]  As to 12.06(B), the ALJ found "that [Ms. Butts] has moderate restriction in activities of daily living; moderate restriction in social functioning; moderate difficulties with regard to

---

upon in determining a claimant's credibility regarding subjective complaints, including pain.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[5]  The ALJ compared PTSD with Section 12.06, Anxiety Related Disorders, because PTSD is not specifically listed in the Listings.

[6]  The ALJ's failure to address 12.06(A) does not affect the Court's analysis because the record and the rest of the ALJ's decision show that Ms. Butts met the requirements of 12.06(A), and so the error is harmless.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (explaining harmless error when reviewing ALJ's findings).

concentration, persistence or pace; and no episodes of decompensation, which have been of extended duration." As to 12.06(C), the ALJ found that "the evidence fails to establish the presence of the 'paragraph C' criteria."[7] There is no challenge to the ALJ's findings as to 12.06(C), thus the Court will only address the ALJ's analysis under 12.06(B).

The ALJ concluded that, under 12.06(B), "[Ms. Butts'] mental impairments did not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." The ALJ referred to his analysis at Step 4 to justify this determination, stating that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Accordingly, the Court turns to the ALJ's Step 4 analysis to determine whether "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the Step 3 determination under review." *Fischer-Ross*, 431 F.3d at 734.

At Step 4, the ALJ also discussed Ms. Butts' PTSD more extensively. He gave "great" or "substantial" weight to the psychological evaluations of Dr. Bradley and Dr. Sexton, respectively, but "accorded little weight" to Dr. McInroy's opinion reflected on the form entitled "Mental Impairment Questionnaire (RFC & Listings)".

Dr. McInroy's status as a "treating source," as defined in 20 C.F.R. § 404.1502, normally would require that his opinions be given greater weight than opinions of non-treating sources. 20 C.F.R. § 404.1527(c)(2). A treating source's opinion is given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques," and that

---

[7] The ALJ added two more factors to his 12.06(C) analysis, namely that the impairments "resulted in repeated episodes of decompensation of extended duration," or "[the claimant's] adjustment is so marginal that a minimal increase in mental demands would be predicted to cause her to decompensate." These two additional requirements were drawn from Listing 12.04(C), Affective Disorders, and are inapplicable to the 12.06(C) analysis. Because the record is clear that Ms. Butts did not meet the requirements of 12.06(C), the Court finds this error to be harmless. *Fischer-Ross, 431 F.3d at 729.*

opinion is "also 'not-inconsistent' with the other substantial evidence in the case record." SSR 96-2p; *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth 'specific, legitimate reasons' for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 2013 (10th Cir. 2001) (citations omitted). Even if a treating source's opinion is not entitled to controlling weight, that opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." SSR 96-2p. These factors include:

> The length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [treating source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau*, 255 F.3d at 1213. An ALJ may also have the obligation to obtain more information from a treating source. 20 C.F.R. § 404.1512(e).

In this case, the ALJ dismissed Dr. McInroy's opinions citing a lack of records, reasoning, and factual basis. The ALJ expressed significant skepticism regarding Dr. McInroy's physical RFC assessment. He wrote "[b]ecause [Dr. McInroy] has no medical background, and did not identify physical bases for the restrictions he assigned to [Ms. Butts], his opinion regarding the claimant's physical RFC is given little weight." However, the ALJ's skepticism regarding Dr. McInroy's physical RFC assessment, which may have been appropriate, was then extended to Dr. McInroy's mental RFC assessment, which the ALJ also dismissed.

Dr. McInroy's mental RFC assessment was that Ms. Butts had moderately severe to extreme impairment in many areas of functioning, "marked" functional limitations in activities of daily living, maintaining daily social functioning, maintaining concentration, persistence, or

pace, and four or more episodes of decompensation within the prior twelve months, each of at least two weeks duration. Dr. McInroy also opined that Ms. Butts "requires a highly structured and supportive living arrangement," and is "unable to leave her house". The ALJ determined that these opinions were not supported in the record and that Dr. McInroy failed to delineate a basis for his opinions.

The ALJ properly identified what he considered to be failures of documentation and inconsistent findings, but he did not articulate his assessment of all of the factors found in 20 C.F.R. § 404.1527. In particular, he did not explain why he rejected Dr. McInroy's assessment of "marked" limitations in favor of the opinions of consulting professionals who characterized them as mild. In a case such as this, where multiple medical opinions are at odds, the weight given to various medical opinions and the reasons supporting that weight should be clearly and completely analyzed. It is not sufficient to reject Dr. McInroy's mental RFC assessment simply because he was not qualified to render a physical assessment. To the extent that the ALJ believed that records of Dr. McInroy's treatment were missing or were inconsistent with his opinions, the ALJ should have attempted to supplement the record. There is nothing in the record to suggest that this was done.

Given this uncertainty, the Court cannot conclude that the ALJ's Step 4 analysis sufficiently confirms "the [Step 3] determination under review." *Fischer-Ross*, 431 F.3d at 734. In addition, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues." *Henrie v. U.S. Dept. of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993); 20 C.F.R. § 404.1512(e).

For the forgoing reasons, the Commissioner of Social Security's decision is

**REVERSED**, and the case is **REMANDED** for further proceedings.

DATED this 6th day of February, 2013

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge